166 So. 679
**NATIONAL LIFE & ACCIDENT INS. CO. v. WILLIAMS.**
2 Div. 74.

Supreme Court of Alabama.
March 19, 1936.

McKinley & McDaniel, of Demopolis, for appellant.

L. R. Wilson, of Demopolis, for appellee.

KNIGHT, Justice.

Suit by appellee on a policy of insurance issued by the appellant upon the life of Tom Williams, deceased, in which the appellee was named as the beneficiary.

The cause was tried upon the general issue, with leave to offer in evidence any matters of defense that would be available under any special plea.

There were verdict and judgment for the plaintiff, appellee, and the defendant appeals.

The defendant, as a defense to the action other than for a return of the premiums paid, and the interest thereon, invoked the following provision of the policy contract, to wit: "No obligation is assumed by the company prior to the date hereof. If the insured is not alive or is not in sound health on the date hereof; or if before the date hereof, the insured has been rejected for insurance by this or by any other company, order or association, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, unless such rejection or previous disease is specifically recited in the 'Space for Endorsements' in a waiver signed by the secretary, then, in any such case, the company may, within the contestable period, declare this policy void and the liability of the company shall be limited to the return of premiums paid on the policy."

The particular disease that the defendant contended the insured was suffering from at the time of and prior to the issu-

ance of the policy was *cardio renal disease,* "commonly known or called Bright's, heart and kidney disease"; that such disease was fatal and incurable.

The policy of insurance was issued on December 1, 1930, and the insured died in September thereafter.

Upon conclusion of the evidence, the defendant requested in writing the affirmative charge, with hypothesis, in its favor, which was refused by the court.

After the jury had returned a verdict for the plaintiff for the full amount of the insurance, the defendant filed motion for new trial, upon a number of grounds, among them: (a) That the verdict was excessive, (b) the verdict was contrary to the evidence, and (c) that the maximum amount that the plaintiff could recover under the evidence in the case was the aggregate of premiums paid on the policy, plus the interest thereon. These premiums, with the interest thereon, before the suit was brought, the defendant had tendered to the plaintiff, and this tender money the defendant duly deposited in the court on the institution of the suit.

On the trial, two expert witnesses were examined. Dr. W. T. Cocke was offered and examined by the defendant, and in rebuttal Dr. E. B. Bailey testified on behalf of the plaintiff. All testimony (except that given by S. E. Selby for the defendant) touching the physical condition of the insured was given by Drs. Cocke and Bailey.

Dr. Cocke, in substance, testified that he had been practicing medicine for about thirty-five years; that he knew the insured, Tom Williams, deceased; that within twelve months from the insured's death he was called in to attend him professionally; that he made an examination of the insured; that he found him to be suffering from cardio renal disease, commonly known or called Bright's, heart, and kidney disease; that such disease was fatal, incurable; that witness first examined Tom Williams on May 5, 1930; that witness then made a thorough examination of the said Williams, which consisted of an examination of his heart and kidneys; that witness visited the said Tom Williams three times a week between May 5, 1930, and June 5, 1930; and that he was still suffering from said disease. That he visited the deceased on the day before his death, and that he died of heart and kidney disease.

The plaintiff, in rebuttal, examined Dr. E. B. Bailey, who testified that he was a practicing physician; that in November he made an examination of the insured, Tom Williams; and that he had no heart disease at that time.

This witness testified further that he was the examining physician for the defendant insurance company, and made out the report that was shown him; that the witness made a physical examination of the insured.

On cross-examination, Dr. Bailey testified that he had "just a slight acquaintance" with the said Tom Williams. In reply to question by defendant's counsel if he could really be positive that it was Tom Williams or some one else he had examined, the witness said, "I couldn't be positive on that," saying "that witness did not know Tom Williams well enough to know whether it was Tom Williams, or some other negro, whom he examined; that they could have switched in some one else." Further testifying, Dr. Bailey said that he was "not well acquainted with Tom Williams, and *did not know whether* it was Tom Williams whom he examined or not; * * * that the examination which witness gave Tom Williams consisted of counting his pulse, listening to his heart and asking some questions; that cardio renal disease is Bright's disease; that in cardio renal disease the heart is affected; * * * that in order to determine whether an individual has cardio renal disease you have to examine his urine; that if you examine his urine you could determine whether an individual had cardio renal disease; that witness had no recollection of having examined Tom Williams' urine. That witness could not tell the jury that Tom Williams did not have cardio renal disease at the time he examined him; that witness could not tell whether Tom Williams had said disease without examining his kidneys, but he could tell that Tom Williams didn't have heart disease; that cardio renal disease is incurable and fatal, and that such disease would largely increase the risk under a policy of insurance." That witness made "no examination of Tom Williams for his kidneys."

The foregoing was in substance the testimony in the case touching the physical condition of the insured at the time the policy was written.

We think the evidence, under our scintilla rule, was sufficient to carry the case to the jury.

However, we are clear to the conclusion that the verdict was contrary to the great weight of the evidence, and that the trial court committed error to reversal in overruling defendant's motion for a new trial. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

For the error committed by the trial court in overruling defendant's motion for a new trial, the judgment must be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.